NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1342


ILIGHT TECHNOLOGIES, INC.,

Plaintiff-Appellee,

v.

FALLON LUMINOUS PRODUCTS CORPORATION,

Defendant-Appellant.


Timothy J. Vezeau, Katten Muchin Rosenman LLP, of Chicago, Illinois, argued for plaintiff-appellee. With him on the brief was James A. Gromada, of Washington, DC. Of counsel on the brief was Stephen H. Price, Stites & Harbison, PLLC, of Nashville, Tennessee.

Joseph S. Presta, Nixon & Vanderhye, P.C., of Arlington, Virginia, argued for defendant-appellant. With him on the brief was Gordon P. Klancnik. Of counsel on the brief were C. Mark Kittredge, Perkins Coie Brown & Bain P.A., of Phoenix, Arizona, Douglas L. Sawyer, Perkins Coie LLP, of Denver, Colorado; and Brandy R. McMillion, of Chicago, Illinois.

Appealed from: United States District Court for the Middle District of Tennessee

Judge William J. Haynes, Jr.

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1342

ILIGHT TECHNOLOGIES, INC.,

Plaintiff-Appellee,

v.

FALLON LUMINOUS PRODUCTS CORPORATION,

Defendant-Appellant.

Appeal from the United States District Court for the Middle District of Tennessee in case no. 06-CV-0025, Judge William J. Haynes, Jr.

_____

DECIDED:  April 20, 2010

_____

Before MAYER, SCHALL, and GAJARSA, <u>Circuit Judges</u>.

SCHALL, <u>Circuit Judge</u>.

## DECISION

iLight Technologies, Inc. ("iLight") sued Fallon Luminous Products Corporation ("Fallon") in the United States District Court for the Middle District of Tennessee for infringement of claims 8 and 25 of U.S. Patent No. 6,592,238 ("the '238 patent"); claims 1 and 8 of U.S. Patent No. 6,953,262 ("the '262 patent"); and claims 1, 5, and 8 of U.S. Patent No. 7,188,970 ("the '970 patent").  The patents, each of which is assigned to iLight, relate to illumination devices for simulating neon lighting, such as in signs.

Following a jury trial, all asserted claims were found both not invalid and willfully infringed. As a result, iLight was awarded $3 million in compensatory and increased damages, and Fallon was permanently enjoined from infringing the patents. Subsequently, after denying Fallon's motion for a new trial and its renewed motion for judgment as a matter of law, the district court entered final judgment in favor of iLight. See Final Judgment (awarding iLight (i) the above damages with pre- and post-judgment interest; (ii) $1,760,391.54 in attorney's fees and costs; and (iii) injunctive relief); and Amended Permanent Injunction Order (listing specific Fallon "Infringing Products" as well as products Fallon is permitted to sell by agreement with iLight)..

Fallon has timely appealed from the final judgment of the district court. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(1). For the reasons set forth below, we vacate the judgment of the district court and the permanent injunction entered against Fallon. The case is remanded to the district court for further proceedings consistent with this opinion.

DISCUSSION

I.

Claim 8 of the '238 patent, which is representative of the claims at issue, recites as follows:

8. An illumination device for simulating neon lighting, comprising:

a substantially rod-like member having a predetermined length with a lateral light receiving surface and a lateral curved light emitting surface having a predetermined circumferential width, said member being comprised of a material that has both optical waveguide and light scattering properties t[h]at preferentially scatters light entering said light receiving surface into an elongated light intensity pattern on said light emitting surface with a major axis extending along said predetermined length;

an elongated light source extending along and positioned adjacent said light receiving surface and spaced from said light emitting surface a sufficient distance to allow said light intensity pattern on said emitting surface to have a minor axis extending substantially the entire circumferential width of said light emitting surface;

a housing in which said light source is positioned, said housing extending along said light receiving surface and having a pair of side walls, each with an interior light reflecting surface and an exterior light absorbing surface; and;

an electric connecting member positioned within said housing and adapted to connect said light source to a remote power source.

The asserted patents are continuations from a single application. They therefore share a common specification. As do the parties, for convenience, we refer to the specification of the '238 patent. The patents depend from the same provisional application, U.S. Provisional App. No. 60/265,522.

A preferred embodiment of the claimed invention is depicted in Figures 1 and 3 of the specification, both reproduced below.



FIG. 1          FIG. 3

Figure 1 depicts a device **10** having two major body components. '238 patent, col.4 ll.57-58. The first component is a "waveguide" **12** having an exposed curved lateral surface **13**, which serves as a light emitting surface; the second component is a

hidden lateral surface **15** (shown in Figure 3), which serves as a light receiving surface. Id., col.4 ll.58-62. As shown in Figure 3, light emitting diodes, or "LEDs," **24** are positioned beneath lateral surface **15** and serve as a light source. The specification states: "[T]he light laterally entering the waveguide from a light source juxtaposed to the surface **15** is preferentially scattered so as to exit with a broad elongated light intensity distribution pattern out of surface **13**." Id., col.4 ll.64-67. In this way, in operation, the claimed invention simulates a neon light.

Fallon's accused device is depicted below.

 

Fallon's signs have a string of LEDs, positioned in a row along a housing channel and below a plastic diffuser; the plastic diffuser is in the form of an arched apex. The photograph on the left shows the exterior of a Fallon light. The arched covering on top is made of a light-transmissive plastic member that emits light. It is attached on the bottom to a hard black plastic body with a patterned outer surface. The hard plastic body houses the LEDs. The diagram on the right shows the approximate dimensions of an end view profile of the inner housing of a Fallon sign. In operation, Fallon's signs

simulate neon lighting.  The signs typically appear in shapes of letters and decorative accents.

## II.

On appeal, Fallon challenges the district court's construction of the claim limitations "rod" and "rod-like," "preferentially scatters light," and "light reflecting surface" and "light absorbing surface."  Fallon argues that, under the correct construction of any of these limitations, it is entitled to a judgment of non-infringement as a matter of law, or at least a new trial on infringement.  Fallon also argues that the district court erred in failing to hold the asserted claims invalid by reason of indefiniteness.  In making this argument, Fallon points to the district court's explanation to the jury with respect to the virtually identical preambles of the asserted claims.  It also points to the claim limitations "interior light reflecting surface" and "exterior light absorbing surface."  In Fallon's view, if each preamble is considered a claim limitation, the limitation is indefinite because, under the district court's explanation, it calls for a "subjective opinion" as to whether or not a lighted sign successfully simulates neon.  The terms "interior light reflecting surface" and "exterior light absorbing surface" are indefinite, Fallon says, because they provide no workable objective standard by which respective "surfaces" can be measured.

## III.

We see no error in the district court's construction of the claim limitations "preferentially scatters light," "light reflecting surface," and "light absorbing surface." Neither do we see error in the district court's rejection of Fallon's argument that the

asserted claims are invalid by reason of indefiniteness. We turn, therefore, to the issue of the construction of the claim limitations "rod" and "rod-like."

The term "rod" appears in claims 1 and 8 of the '262 patent and claim 5 of the '970 patent. The term "rod-like" appears in claim 8 of the '238 patent and claims 1 and 8 of the '970 patent. "Rod" and "rod-like" are used with reference to the claimed invention's waveguide, designated **12** in Figure 1 of the specification. Fallon urged the district court to construe the limitations as follows: "[a] structure that is both solid and shaped like a rod, as opposed to a hollow tube or hollow arch." For its part, iLight urged the following construction: "[a] structure that is substantially larger in one of its three dimensions than in the two other orthogonal dimensions, and that has a substantially constant cross-section in the direction of the longest of the three dimensions. A hollow tube would not constitute a rod." Prior to trial, the district court instructed the jury as follows: "The term 'rod' means a slender strip or slender bar resembling in shape a wand. The term 'rod-like' means a slender bar like a rod."

Fallon argues that the district court erred in its claim construction because the construction failed to reflect the patent applicants' "unambiguous disavowal [during prosecution] of hollow, thin walled diffusers and [the] express limitation [of the invention] to solid rods to distinguish prior art." See Appellants' Br. 33. As noted, Fallon contends that, under a correct construction of "rod" and "rod-like," its devices do not infringe. Id. at 35.

The prior art which Fallon asserts gave rise to a disclaimer of "hollow thin walled diffusers" is U.S. Patent No. 6,361,186 to Slayden ("Slayden"). Slayden relates to simulated neon lighting having a series of LEDs aligned inside an opaque tubular

housing hidden below a translucent diffuser of circular cross-section. Slayden, col.1 ll.39-42. The light emitted by the LEDs passes from the housing chamber into the circular diffuser. This results in the refraction and reflection of light by the diffuser producing a neon-like glow with substantially homogeneous light intensity across the exposed surface of the diffuser. Id. at col.1 ll.50-56. Figures 1, 2 and 4 from the Slayden specification are reproduced below.



Figure 1 depicts the light with its two major body components: the elongated translucent diffuser (**10**) on top and the elongaged opaque tubular housing (**30**) containing the LED circuit board below. '238 patent, col.4 ll.57-58. Figures 2 and 4 depict the first component, the diffuser, from an end elevation view. Figure 4 shows an alternate slotted embodiment of the diffuser. Id. at col.3 ll.55-59.

In an initial office action, the Examiner rejected over Slayden claims of the application corresponding to claims asserted by iLight against Fallon. Responding to the rejection over Slayden, the applicants stated:

> [Slayden] describes the use of a hollow, thin-walled, translucent diffuser that provides <u>no</u> preferential scattering of light, a critical feature of the illumination device described and claimed in the present application . . . [T]o achieve the desired light intensity and uniformity, the rod must preferentially direct light along its length while also urging the light out of a lateral surface, This requires an essentially solid rod with optical

waveguide and light scattering characteristics. Neither cited prior art reference teaches or suggests the use of an essentially solid rod, nor does either reference teach or suggest the use of a rod with optical waveguide and light scattering characteristics.

iLight does not dispute that it explicitly disclaimed a "hollow tube" structure during prosecution. Neither does it dispute that such disclaimer includes both an elongated circular tube and a slotted tube embodiment, as depicted above in Figures 2 and 4 of Slayden. iLight argues, however, that the disclaimer does not cover Fallon's structure, which iLight refers to as a "solid arch" structure. iLight argues that Fallon's lights were in no way disclaimed because they do not have the tubular shape that was critical to Slayden, nor the functional benefits of the Slayden structures. See Appellee's Br. 44-45. At oral argument, counsel for iLight stated that the disclaimer of "hollow" does not extend to Fallon's "solid arch" structure because the latter lacks the ability to achieve multiple internal refractions inside a hollow structure.

IV.

Claim construction is a question of law that this court reviews de novo. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). Whether prosecution history disclaimer applies is a legal question this court also reviews de novo. Id. at 1456.

We agree with Fallon that, during prosecution, the patent applicants unequivocally disclaimed hollow structure. We reach that conclusion for the following reasons: First, the Examiner initially rejected claims 1-4, 14, and 16-21 of the application as being anticipated by Slayden. The simulated neon light of Slayden "includes an elongated translucent diffuser **10**, an elongated opaque tubular housing **30** and a light emitting diode circuit board **50**." Slayden, col.2 ll.65-67. It is undisputed that

the diffuser **10** is hollow.  Second, in the claimed invention, the waveguide **12**, which corresponds to the translucent diffuser **10** in Slayden, is solid.   Third, and most importantly, the applicants responded to the rejection and distinguished their invention from Slayden based upon the fact that their invention "requires" a "solid" rod.  Critically, as seen above, applicants stated:  "[T]o achieve the desired light intensity and uniformity, the rod must preferentially direct light along its length while also urging the light out of a lateral surface.  This requires an essentially solid rod with optical waveguide and light scattering characteristics**."**   In short, as far as their waveguide is concerned, applicants disclaimed non-essentially solid structure.

For the foregoing reasons, we hold that the district court erred in its construction of the claim terms "rod" and "rod-like."  The jury should have been instructed that the claimed invention did not include "hollow" structure for the waveguide and that, in order to infringe, structure in the accused Fallon products corresponding to the waveguide could not be "hollow."  We think that Fallon's proposed claim construction, augmented by appropriate instruction to the jury with respect to the "solid" requirement, would have accomplished this.

V.

The judgment of infringement in favor of iLight and the permanent injunction entered against Fallon are vacated.  The case is remanded to the district court for further proceedings relating to infringement consistent with this opinion.  That means those proceedings will be based upon (1) the revised construction of the terms "rod" and "rod-like" described above; (2) the previous claim construction of the district court

insofar as we have affirmed it; and (3) the jury being instructed that a hollow waveguide does not, as matter of law, infringe.

Each party shall bear its own costs.